O St 445

WILLIAM HARDING *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 30, 1896.*

| 160 | 459 |
| 175 | 54 |

| 160 | 459 |
| 190 | ³ 36 |

| 160 | 459 |
| 96a | ²315 |

| 160 | 459 |
| 203 | ³165 |
| 203 | ³374 |
| 205 | ³510 |

| 160 | 459 |
| 207 | 629 |

1. CONSTITUTIONAL LAW—*term "due process of law" defined.* The phrases "due process of law" and "law of the land" are synonymous, and refer to general, public law operating upon all alike, and not to such as singles out for regulation, without reason, particular persons or classes.

2. SAME—*class legislation not authorized by police power nor by constitution.* The police power does not give the right to enact a partial statute, obnoxious to the constitution as class legislation, nor is such a statute regulating the weighing of coal at mines authorized by section 29, article 4, of the constitution, providing for laws to secure safety to coal miners.

3. SAME—*penal laws which are partial are void.* A statute making that an offense, if committed by a person engaged in one branch of mining, which, if done by a person engaged in another branch of the same business, would be lawful, without reason for distinction between the two, is unconstitutional.

4. SAME—*law regulating weighing of coal of particular mines.* The fact that the product of coal mines is shipped by rail or water does not form a reasonable basis for statutory regulations for the weighing of the coal of such mines different from those applying to all other mines.

5. SAME—*statute depriving miners of the right to make contracts is void.* A statute which deprives coal miners, and those employing them, of the right to fix upon the weight of coal mined or the amount due for mining the same, in any manner mutually satisfactory, is unconstitutional.

6. SAME—*act of 1887, and amendment thereto, unconstitutional.* The act approved June 17, 1887, to provide for the weighing of coal at mines, as amended June 16, 1891, is in violation of section 2 of article 2 of the constitution, and is therefore void.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. FERDINAND BOOKWALTER, Judge, presiding.

W. J. CALHOUN, and H. M. STEELY, for plaintiffs in error:

This statute is not justified under the police power. Potter's Dwarris, 458; *Austin* v. *Murray*, 16 Pick. 121; *Railway Co.* v. *Jacksonville*, 67 Ill. 40; *Godcharles* v. *Wizeman*, 113 Pa. St. 431; *Watertown* v. *May*, 109 Mass. 315; *State* v. *Goodwillie*, 3 W. Va. 179; *Yeazel* v. *Alexander*, 58 Ill. 254; *Jones* v. *People*, 110 id. 590; *Millett* v. *People*, 117 id. 294; *Frorer* v. *People*, 141 id. 171.

It deprives persons of liberty and property without due process of law. *People* v. *Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 id. 377; *People* v. *Gillson*, 109 id. 389; *Powell* v. *Commonwealth*, 114 Pa. St. 265; *Millett* v. *People*, 117 Ill. 294; *Frorer* v. *People*, 141 id. 171; *Butchers' Union* v. *Crescent City*, 111 U. S. 746; *State* v. *Indiana*, 120 Ind. 575; *Ramsey* v. *People*, 142 Ill. 380; *Braceville Coal Co.* v. *People*, 147 id. 66; *State* v. *Addington*, 77 Mo. 110; Cooley's Const. Lim. (1st ed.) 352, 353, 391; *Ex parte Kulbach*, 85 Cal. 274; *Ragio* v. *State*, 86 Tenn. 272; *State* v. *Devine*, 98 N. C. 768.

It is special or class legislation, within the meaning of section 22 of article 4 of the constitution, in that it applies only to persons engaged in mining, and only to those mines whose product is shipped by rail or water. *Thomas* v. *Railroad Co.* 40 Fed. Rep. 126; *People* v. *Wright*, 70 Ill. 398; *Welker* v. *Potter*, 18 Ohio, 85; Sedgwick on Stat. 30; Cooley's Const. Lim. (6th ed.) 483, 484; *Wynehamer* v. *People*, 13 N. Y. 433.

The legislature has no right, under the pretense of exercising the police power, to pass laws not necessary to the preservation of health, or that will impair the obligation of contracts, or to take or impair private property for public use. *Millett* v. *People*, 117 Ill. 303; *Railroad Co.* v. *Jacksonville*, 67 id. 40; *King* v. *Davenport*, 98 id. 314;

*Commonwealth* v. *Canal Co.* 66 Pa. St. 50; *Crenshaw* v. *Slate River Co.* 6 Rand. 264; *Miller* v. *Railroad Co.* 21 Barb. 518; *People* v. *Railroad Co.* 9 Mich. 307.

MAURICE T. MOLONEY, Attorney General, (G. T. BUCK-INGHAM, T. J. SCOFIELD and M. L. NEWELL, of counsel,) and S. G. WILSON, State's Attorney, for the People:

All presumptions and intendments are in favor of the validity of a statute. The burden of proof is on him who assails it. "To doubt the validity is to sustain the statute." 3 Am. & Eng. Ency. of Law, 364; Cooley's Const. Lim. 173; Endlich on Interp. of Statutes, 738; *Harmon* v. *Chicago*, 140 Ill. 376; *People* v. *Gaulter*, 149 id. 39; *Wunderle* v. *Wunderle*, 144 id. 43.

The police power of the State includes not only public health and safety, but also the public welfare, protection against impositions, financial and otherwise, and, generally, the public best interest. It is so extensive and all-pervading that the courts refuse to lay down a general rule defining it, but decide each specific case on its own merits. 18 Am. & Eng. Ency. of Law, 752; *Express Co.* v. *People*, 33 Ill. 649; *McPherson* v. *Chebanse*, 114 id. 47; *Munn* v. *People*, 69 id. 89; *Harmon* v. *Chicago*, 110 id. 408; Endlich on Interp. of Statutes, 535; 3 Parker & Worthington on Public Health and Safety, 286, 535; Dillon on Mun. Corp. 141; Cooley's Const. Lim. 573.

With the wisdom, propriety and expediency of a statute the court is not concerned—that belongs to the legislature. Cooley's Const. Lim. 186; *Lake View* v. *Rose Hill*, 70 Ill. 194; *Harper* v. *People*, 91 id. 367.

Statutes regulating and controlling business interests, and protecting the public, or some portion of the public, from imposition of a financial nature purely, have been held within the police power, and valid. *Munn* v. *People*, 69 Ill. 69; *People* v. *Harper*, 91 id. 367; *Cole* v. *Hall*, 103 id. 32; *Railway Co.* v. *People*, 105 id. 236; *Hawthorne* v. *People*, 109 id. 302; *Harmon* v. *Chicago*, 110 id. 408.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiffs in error were indicted and convicted for a violation of the act requiring the weighing of coal at the mines, in force July 1, 1887, as amended by act in force July 1, 1891. . Some of the counts upon which they were found guilty charged them with a failure to weigh all the coal delivered from the mine, and others charged them with not keeping a correct record of the weight of each miner's car. The portion of the act under which the prosecution was had, material to the same, is as follows:

"Sec. 1. That the owner, agent or operator of every coal mine in this State at which the miners are paid by weight, shall provide at such mines suitable and accurate scales of standard manufacture, for the weighing of all coal which shall be hoisted or delivered from such mines.

"Sec. 2. All coal so delivered from such mines shall be carefully weighed upon the scales as above provided, and a correct record shall be kept of the weight of each miner's car, which record shall be kept open at all reasonable hours for the inspection of all miners or others pecuniarily interested in the product of such mine. The person designated and authorized to weigh the coal and keep such record shall, before entering upon his duties, make and subscribe to an oath before some magistrate or other officer authorized to administer oaths, that he will accurately weigh and carefully keep a true record of all coal delivered from such mine, and such oath shall be kept conspicuously posted at the place of weighing.

"Sec. 5. Any person, owner or agent operating a coal mine in this State who shall fail to comply with the provisions of this act, or who shall obstruct or hinder the carrying out of its requirements, shall be fined for the first offense not less than fifty dollars ($50) nor more than two hundred dollars ($200), for the second offense not less than two hundred dollars ($200) nor more than five hun-

dred dollars ($500), and for a third offense not less than five hundred dollars ($500) or be imprisoned in the county jail not less than six months nor more than one year: *Provided*, that the provisions of this act shall apply only to coal mines whose product is shipped by rail or water."

The constitutionality of this act is challenged by plaintiffs in error, and this is the only question that will be considered, although the application of the statute to this case is disputed, and questions of variance, and of error in the giving and refusing of instructions, are also raised.

It is objected that the act is in violation of section 2 of article 2 of our constitution, which provides that no person shall be deprived of life, liberty or property without due process of law, because it singles out operators of one class of coal mines and imposes restrictions upon them not required to be borne by operators of other mines or by persons engaged in other business, and also by interfering with the right of employer and laborer to contract with each other.

The Consolidated Coal Company had owned and operated the mine where plaintiffs in error were employed, for six or seven years. The greater part of its product was shipped from the mine by rail, on the Wabash railroad, and sold in other markets. All the coal so shipped was correctly weighed on scales of standard manufacture, by the company, at the mine, before being dumped into the railroad cars, and a correct record was made of the weight of each miner's car, and that record was posted and kept open at all reasonable hours for the inspection of the miners or any person interested. During this time the company had also furnished the Wabash Railroad Company with coal for its locomotives, which was delivered at the mine into the tenders of the locomotives as they stopped there for coal. There were about two hundred and fifty miners employed, and the average output of the mine was from seven hundred to nine hundred and

fifty tons of screened coal per day. The miners were paid fifty-five cents per ton for screened coal. About the last hundred miners' cars that came up in the evening of each day would be placed on the storage tracks, for the purpose of coaling the locomotives during the night and the next day. This last coal was not weighed, but each miner was given the average weight of the cars sent up by him and weighed during the day as the weight of his last car, crediting him with the average weight of the cars mined by him that day that had been actually weighed.

By the act under consideration its provisions are applied only to coal mines whose product is shipped by rail or water, and the learned Attorney General and counsel for the People construe the provision as making the law applicable to each mine where the major portion of its product is so shipped. However that may be, it is plain that the act not only singles out the operator of a mine and imposes restrictions and burdens upon him as to the use and enjoyment of his property that are not imposed upon other branches of business similarly situated and conducted, but it divides the operators of mines, and only applies its provisions to those whose product is shipped in a certain manner. In the various constitutions the phrases "due process of law" and "the law of the land" are used interchangeably, sometimes one being employed and sometimes the other; but they are synonymous, and the meaning is the same in every case. (Cooley's Const. Lim. 353.) In *Millett* v. *People*, 117 Ill. 294, it was said of this phrase (p. 301): "And this means general public law, binding upon all the members of the community under all circumstances, and not partial or private laws, affecting the rights of private individuals or classes of individuals,"—citing *Jones* v. *Reynolds*, 2 Texas, 251, *Wyenheimer* v. *People*, 13 N. Y. 432, and *Vanzandt* v. *Waddell*, 2 Yerg. 269. And the same declaration was made in *Frorer* v. *People*, 141 Ill. 171, where the statute prohibiting engaging in

keeping a truck-store was held unconstitutional, and in *Braceville Coal Co. v. People,* 147 Ill. 66, where the same conclusion was reached as to an act to provide for the weekly payment of wages by a corporation.

The right to enact such a statute does not arise out of the police power, where much latitude is allowed in determining what may tend to insure the comfort, safety or welfare of society, and it is not authorized by section 29 of article 4 of the constitution, providing for laws to secure safety to coal miners. *Millett v. People, supra.*

Each person subject to the laws has a right that he shall be governed by general, public rules. Laws and regulations entirely arbitrary in their character, singling out particular persons not distinguished from others in the community by any reason applicable to such persons, are not of that class. Distinctions in rights and privileges must be based upon some distinction or reason not applicable to others. In *Braceville Coal Co. v. People, supra,* it is said (p. 72): "And it is only when such distinctions exist that differentiate, in important particulars, persons or classes of persons from the body of the people, that laws having operation only on such particular persons or classes of persons have been held to be valid enactments." No possible reason or distinction affecting any interest, justifying the division of mines made by the act, has been suggested, except that it might be intended to reach mines in which the larger number of miners were employed. But this is not the division or distinction made, and does not in any manner follow from such division. It is not the language or purport of the act, and if such had been the intention of the legislature it would certainly have been made manifest by basing the division or distinction upon the number of miners employed. The act applies equally to the owner of a small mine, where the product may not exceed a car-load per day, and the owner of a mine such as that of the Consolidated Coal Company. The distinction is based solely upon the fact

160—30

of the product being shipped by rail or water, and counsel have been able to suggest no reason why the legislature should require the product of such a mine to be weighed in the manner specified and not that of another mine where the product is sold on the spot. The distinction between operators who sell their product at the mine to some shipper who ships it away to the market, and those who themselves ship their coal by rail or water, is purely arbitrary. Any reason that would apply to one, calling for a restriction upon the manner of doing business, would be equally applicable to the other, and special burdens and restrictions upon one class not imposed upon the other constitute an arbitrary deprivation of rights. As the act makes that an offense if committed by a person engaged in one branch of mining which, if done by persons in another branch of the same business, is lawful, without any reason for distinction between the two, we must regard it as unconstitutional.

In *Millett* v. *People, supra,* and *Ramsey* v. *People,* 142 Ill. 380, where provisions similar to those of the act now under consideration were held to be unconstitutional and void, the general right of the laborer and employer to contract in regard to the price of labor and the method of ascertaining the price was asserted, and the rule was laid down that any restriction upon that right is a deprivation of both liberty and property, within the meaning of the constitutional provision. In view of the discussion of the principles involved in those cases, no extended statement of them will be necessary here. This act makes it an offense against the law for the employer and laborer at any coal mine at which the miners are paid by weight, to determine upon the weight of any miner's car or any lot of coal by any other method than that pointed out by the statute. A failure to weigh a car and to keep a correct record of the weight renders the operator liable to the penalties prescribed by the act, although he and the laborer may have agreed upon the weight of the car or

contracted for other methods of determining the weight. This is well illustrated by the facts of this case. The last cars that came up in the evening of each day, designed for coaling the locomotives, would not be weighed until the coal was dumped into the tenders, so that the miners could not obtain the weights until the next day, and they wanted them the same evening. For this reason, and at the instance of the miners, it had been the custom for six years to give each miner the weight according to the system above stated. When the company attempted to change this system and weigh the coal the miners objected, and insisted upon the custom of averaging weights. No objection was ever made by any miner to this manner of arriving at the weight instead of weighing the cars on the scales. Here was an arrangement, amounting to a contract between the parties, with which all the contracting parties were satisfied, and the testimony upon which plaintiffs in error were convicted came from miners who left during the miner's strike of 1894 and were not again employed by the company.

It seems that a law which deprives men engaged in the business of mining from contracting with each other for the purpose of ascertaining the weight of the coal mined or the amount due them, in any manner mutually satisfactory, cannot be sustained. That such is the effect of this law is the contention of counsel for the People, and it is only upon the assumption that the law does so control the power to contract, that a conviction could have been had in this case, for, as already seen, the parties had contracted otherwise. The act takes away the freedom of contracting by the parties for the ascertainment of the weight of coal except by a certain method, and in our opinion it is unconstitutional.

The judgment will be reversed and the cause remanded, with directions to the circuit court to discharge the defendants.                 *Reversed and remanded.*