(*Superior Court of Cook County.*)

### People ex rel. Sontag

### vs.

### W. D. Kruse.

(Nov. 21, 1899.)

1. "FLAG LAW" UNCONSTITUTIONAL. The Illinois statute known as the "Flag Law" prohibiting the use of the national flag for advertising purposes is in derogation of the constitution and void as not being within the police power of the legislature and coming within the category of laws known as class legislation.

2. SAME. Relator, agent of the Anheuser-Busch Brewing Ass'n, was arrested for selling beer contained in bottles and barrels upon which appeared the trade mark of the Brewing Ass'n, consisting of a device in which stars and stripes appeared on a shield in connection with an eagle, alleged to be in violation of the Illinois flag law prohibiting the use of the national flag or emblem for advertising purposes. Upon *habeas corpus, held* that the law was unconstitutional and that relator should be discharged from arrest.

*Habeas corpus.* Superior court of Cook county. Gen. No. 202,274. Heard before Judges Holdom, Brentano and Stein, sitting *en banc.*

The facts are stated in the opinion.

*C. H. Aldrich,* attorney for plaintiff.

HOLDOM, J.:—

This *habeas corpus* proceeding brings up for consideration
and determination the constitutionality of the so-called "Flag
Law Statute," being an act passed by the legislature of the
state and approved by the governor April 22, 1899, contain-
ing five sections and entitled "An act to prohibit the use of
the national flag or emblem for any commercial purposes or
as an advertising medium." [1]

[1] The Illinois statute in question is as follows:

"An act to prohibit the use of the national flag or emblem for any
commercial purposes or as an advertising medium.

Section 1. Be it enacted by the people of the State of Illinois,
represented in the General Assembly: That it shall be unlawful
for any person, firm, organization or corporation to use or display
the national flag or emblem, or any drawing, lithograph, engraving,
daguerreotype, photograph or likeness of the national flag or em-
blem, as a medium for advertising any goods, wares, merchandise,
publication, public entertainment of any character or for any other
purpose intended to promote the interests of such person, firm, cor-
poration or organization.

Section 2. Nothing in this act shall be construed as affecting
either public or private exhibitions of art, or shall in any way re-
strict the use of the national flag or emblem for patriotic purposes.

Section 3. All prosecutions under the provisions of this act shall
be brought by any person or persons violating any of the provisions
of this act, before any justice of the peace of the county in which
such violation is alleged to have taken place, or before any court of
competent jurisdiction; and it is hereby made the duty of the state's
attorney to see that the provisions of this act are enforced in their
respective counties, and they shall prosecute all offenders on receiv-
ing information of the violation of any of the provisions of this act;
and it is made the duty of the sheriffs, deputy sheriffs, constables
and police officers to inform against and prosecute all persons whom
there is probable cause to believe are guilty of violating the provi-
sions of this act; one-half of the amount recovered in any penal
action under the provisions of this act shall be paid to the person
filing the complaint in such action, and the remaining one-half to
the school fund of the county in which the said conviction is ob-
tained.

Section 4. All prosecutions under this act shall be commenced
within six months from the time such offense was committed, and
not afterwards.

Section 5. Any persons violating the provisions of this act shall

Relator was arrested on five warrants issued by O. H. Mc-Conoughey, a Cook county justice of the peace, for alleged violations of this act. Relator is the agent at Chicago of the Anheuser-Busch Brewing Association, a Missouri corporation, with its brewery and principal office at the city of St. Louis in said state. The trade mark of said brewing company appearing on bottles and barrels of beer vended at Chicago by the relator consisting of a device in which stars and stripes appear on a shield in conjunction with an eagle alleged to be the national emblem, is the *gravamen* of the offense which is claimed to be a violation of the act for which the arrests were made, to free himself from which relator has sued out the writ of *habeas corpus* in this case. The trade mark which it is claimed is violative of the statute has been registered as such in the patent office of the United States and so certified by the commissioner of patents in pursuance of the act of Congress regulating.the registration of "trade marks."

No Federal statute except that establishing the national flag and comprised in sections 1791 and 1792, Revised Statutes United States, and providing also for the addition of a star for each new state admitted into the union, has ever been passed; and as the act of the Illinois legislature now in question does not in any manner conflict with or contravene the Federal statute, and as there is nothing in the organic law of the state or nation limiting in any manner state control of the flag, it. follows that the legislature of Illinois has as much power and right to enact laws in relation to the national flag as congress itself. If, therefore, the act in question is unconstitutional it is for some inherent infirmity which would make it equally so, were it an act of the Federal congress.

There is no force in the contention that the act is repug-

---

be deemed guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than $10.00 nor more than $100.00 and costs, and in default of payment of said fine and costs imposed shall be imprisoned in the county jail at the rate of one day for each dollar of fine and costs imposed.

Approved April 22, 1899.

(Laws of Illinois, 1899, page 234.)

nant to the commerce clause of the constitution. The fallacy of the argument lies in the assumption that a "trade mark" is in effect a component part of an article of commerce because it is a medium of sale; while in fact it is the goods, of which the trade mark is no integral part, which constitutes the commercial article. The registration of a trade mark under the act of congress providing for such registration grants unto· the party registering it, protection against its infringement by others, and nothing more.

It is contended upon the part of the state that the enactment of the "Flag Law Statute," is an exercise of the police power of the legislature, and it is urged with much earnestness and confidence that the statute rests for its support upon that fundamental principle. What constitutes the police power is a question of law to be determined by the court. *Eden v. The People,* 161 Ill. 296; *Lake View v. Rose Hill Cemetery,* 70 Ill. 191. Is the use of the national flag or emblem for commercial purposes or as an advertising medium a subject for police regulation? If it is, it must be upon the theory that such regulation is conducive to the health, morals, peace or security of the property rights of the people of the state.

The supreme court of the United States said in *Mugler v. Kansas,* 123 U. S. 623, on page 661, "If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to these subjects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge and thereby give effect to the constitution."

How can the national flag or emblem upon a beer bottle or barrel, as in the case at bar, affect the public health or morals or the public safety? The national flag, wherever found, stands for our highest ideals of a free government, a free people, with free and enlightened institutions; it stands for valor, for patriotism; it is the standard under whose fold the citizen goes to war and sheds his life's blood for his country's honor and protection. By an act of the legislature passed in 1897,

the national flag was directed to be unfurled over public schools and public institutions, prescribing penalties for its violation.

If the act, therefore, rests upon the police power, it must fail unless it can be so construed as to be an act prohibiting that which is hurtful to the comfort, safety or welfare of the people of the state. A construction strained without reason and unatural—the laws of interpretation ápplicable to like cases inhibit such a conclusion.

Does the exemption from the operation of the act, which in section 2 provides that "Nothing in this act shall be construed as affecting either public or private exhibitions of art," constitute such a discrimination in favor of a particular class as to make the act come within that coterie of laws denominated class legislation? By section 2 of this act public and private exhibitions of art are excluded from its operation—that is plain. It might be contended that public exhibitions of art were for the benefit of and belonging to the people, and therefore it was an exemption which was not either in reality or effect a discrimination against or in favor of any particular class; and while such a contention is tenable it can not be so claimed as to "private exhibitions of art." It will be assumed that private exhibitions are for the benefit and profit of the indivi luals owning the exhibition. There is no limit as to what may be be so exhibited and no definition of how the flag or emblem shall be used in these "private exhibitions of art." Such an exhibition might contain artistic representations of the various unique devices, by which, anterior to July 1, 1899, merchants and traders were wont to designate their several articles of merchandise by using in numberless ways the national flag or emblem. Such private exhibitions would naturally be for profit and thereby the privileged class contemplated by section 2 would be authorized to do just what another and different class are prohibited from doing by section 1 of that act.

Locke, in his treatise on Civil Government, says: "Those who make the laws are to govern by promulgated established

laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the country-man at plough.'' Cooley, Constitutional Limitations, 484; *Strauder v. W. Va.*, 100 U. S. 303. This view of the law was upheld in *Ritchie v. The People*, 155 Ill. 98. The Ritchie case is commonly known as the *Sweat Shop Case*. It was en-acted for the regulation of a particular and designated class of workers, and was held to be repugnant to the constitution and void. The court said: ''We are inclined to regard the act as one which is partial and discriminating in its character. If it be construed as applying only to manufacturers of cloth-ing, wearing apparel and articles of a similar nature, we can see no reasonable ground from prohibiting such manufactur-ers and their employes from contracting for more than eight hours of work in one day, while other manufacturers and their employes are not forbidden to so contract. If the act be con-strued as applying to manufacturers of all kinds of products there is no good reason why the prohibition should be directed against manufacturers and their employes and not against merchants or builders or contractors or carriers or farmers or persons engaged in other branches of industry and their em-ployes therein. Women employed by manufacturers are for-bidden by section 5 to make contracts to labor longer than eight hours in a day, while women employed as saleswomen in stores or as domestic servants, or as bookkeepers or stenog-raphers, or typewriters, or in laundries, or other occupations not embraced under the head of manufacturing, are at liberty to contract for as many hours of labor in a day as they choose. The manner in which the section thus discriminates against one class of employers and employes and in favor of all others, places it in opposition to the constitutional guaranties herein-before discussed and so renders it invalid.''

The principles enunciated in this last case are fully sus-tained in the still later case of *Harding v. The People*, 160 Ill. 459. Reasoning analogous to the foregoing may be found in *In re Grice*, 79 Fed. 627, and *In re Garrabad*, 84 Wis. 585, 19 L. R. A. 858. We are of the opinion that the statute in

question is in derogation of the constitution and void as not being within the police power of the legislature and coming within the category of laws known as class legislation

The relator will therefore be discharged.

From this opinion Judge Stein dissents, except upon the questions arising under the commerce clause of the Federal constitution and the right of the state to legislate in relation to the national flag.

### NOTE.

Validity of laws prohibiting the use of the United States flag for advertising purposes.

In *Ruhstrat v. People*, 185 Ill. 133 (1900) the Illinois Act of 1899, known as the "Flag Law" prohibiting under penalty the use of the national flag or emblem for advertising purposes, was held unconstitutional as an arbitrary invasion of the personal rights and liberties of a citizen.

In *People ex rel. v. Van de Carr*, 178 N. Y. 425, 70 N. E. 965 (1904) a similar law was declared unconstitutional, the court relying upon the decision in *Ruhstrat v. People*, 185 Ill. 133.

But in *Halter v. State*, 105 N. W. 298 (Neb. Oct. 1905) a "Flag Law" prohibiting the use of the national flag or emblem for advertising purposes was upheld as constitutional, the court expressly disapproving and refusing to follow the decision of the Illinois supreme court in *Ruhstrat v. People*, 185 Ill. 133 (1900).