## Charles A. Pierce et al. and State Board of Live Stock Commissioners v. E. B. Dillingham.

1. STATUTES—*Construction of the Act in Relation to the Suppression and Prevention of the Spread of Contagious and Infectious Diseases Among Domestic Animals.*—The act of the General Assembly in relation to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals (Laws, 1885, 1,) does not authorize the Governor, upon the report of the Board of Live Stock Commissioners, to issue a proclamation, scheduling all of the United States and Territories of the United States other than the State of Illinois, and prohibiting the importation of dairy or breeding cattle therefrom into the State of Illinois, except under regulations prescribed by said act.

2. SAME—*Penal Statutes to be Strictly Construed.*—Section four of the act in relation to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals (Hurd's R. S., 1899, 155), providing, for a violation of some of its provisions, fines ranging from $1,000 to $10,000, and for a violation of other provisions, fines ranging from $25 to $200, and prescribing imprisonment in the county jail until fines and costs are paid, and a forfeiture of all right to compensation for property destroyed, under the act, is a penal statute, to be strictly construed, and not to be extended by implication.

Pierce v. Dillingham.

3. SAME—*Construction of the Act in Relation to the Suppression and Prevention of the Spread of Contagious and Infectious Diseases Among Domestic Animals.*—It was not the design of the legislature in enacting the statute in relation to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals, to confer upon the Board of Live Stock Commissioners and the Governor the power to prohibit the importation into the State of Illinois of cattle from any and every quarter of the globe except upon such conditions as they might prescribe.

4. SAME—*Discrimination Not Authorized.*—It was not the intention of the legislature, in enacting the statute in relation to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals, to confer upon administrative and executive officers the power to select certain kinds of cattle and prescribe that such cattle can not be brought into the State of Illinois from any quarter of the globe except upon seizure and inoculation and perhaps slaughter at the hands of the Live Stock Commissioners, while other cattle can come in free.

**Replevin.**—Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the November term, 1900. Affirmed. Opinion filed July 12, 1901.

**Statement.**—This was an action of replevin, the only question here presented being as to the action of the court in sustaining a demurrer of appellee to a plea of appellant filed therein.

Appellant Charles A. Pierce, on May 19, 1900, was veterinarian of the State Board of Live Stock Commissioners. On May 19, 1900, appellee imported into this State twenty-three dairy and breeding cattle, such cattle being unaccompanied with the certificate of tuberculin test required by the rules of the said board.

On the said date appellant Charles A. Pierce, as such veterinarian, in accordance with the rules of said board, quarantined and took possession of the said twenty-three cows at the stock yards at Dundee, Illinois, with the aid of the sheriff of Kane county, and placed Lyman Andrews in possession as custodian; and the appellant Charles A. Pierce proceeded immediately to so test said cattle.

On the 22d of May, 1900, appellee filed in the Circuit Court of Kane County an affidavit in replevin, alleging that appellants wrongfully detained twenty-three cows belong-

ing to appellee, of the value of $700; that appellee was entitled to the possession of the same; and that the same were not taken for any tax, etc., nor seized under any execution or attachment against appellee, etc.

On the same day a writ of replevin was issued by the said court and delivered to the coroner, Charles B. Mead, to serve, which writ was returned as served upon appellants, and by taking the property therein named and turning the same over to appellee. A *narr.* was duly filed in said court by appellee, to which appellants filed the plea in controversy, to which plea appellee filed a special demurrer, which the court sustained. Appellants elected to stand by their plea, whereupon the court entered judgment against appellants.

The plea sets up :

First. That the State Board of Live Stock Commissioners, on June 13, 1899, reported in writing to John R. Tanner, Governor, that "tuberculosis, a dangerously contagious disease, prevails to a *greater or less extent* among the cattle constituting the *dairy and breeding herds of all the States and Territories of the United States, and foreign countries,* and that cattle *affected* with this disease, being brought into the State of Illinois, are dangerous, and liable to communicate said disease to other cattle with which they are brought in contact," and requesting the Governor to issue a proclamation in pursuance of the terms of "An act to revise the law in relation to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals," and requesting the Governor in such proclamation to schedule all States and Territories within the United States, other than the State of Illinois, and all foreign countries, and prohibit the importation of dairy or breeding cattle (cows, bulls or calves) therefrom into the State of Illinois, except in accordance with the rules and regulations adopted by the said board.

That the Board of Live Stock Commissioners, on June 13, 1899, submitted with their report to the Governor a set of rules and regulations prescribed by the said board to

govern the importation of dairy and breeding cattle into the State of Illinois from States and Territories to be scheduled by the Governor's proclamation (" as requested by the said report with reference to tuberculosis among cattle.")

That the rules so submitted were on the 13th day of June, 1899, duly approved by the Governor.

The plea then sets out the rules in full, being in part as follows:

" Rule 1. Any shipper or owner of dairy or breeding cattle in States or territory scheduled or to be scheduled by the Governor on account of tuberculosis among cattle, desiring to ship such cattle into the State of Illinois, must, before offering the same for shipment to any railroad or transportation company, or before driving the same into this State, have such cattle tested with tuberculin by a veterinarian recognized by the sanitary authorities of the State in which such owner or shipper resides and authorized by such authorities to make such test.

Rule 2. Before offering any such cattle for shipment, as aforesaid, or before driving the same into the State of Illinois, a statement in duplicate, of temperatures taken in the test provided for in rule 1, certified by such duly authorized and recognized veterinarian, with the affidavit on the back thereof of the owner, setting forth that the cattle to be shipped or transported or driven into this State are the same referred to in the statement of temperatures therein, must be sent to the State Board of Live Stock Commissioners at Springfield, Illinois, for indorsement, or acceptance and approval of such test, which indorsement, if the test is accepted and approved, shall be made by the secretary or chairman of said board, and the original copy of the statement thus indorsed will be returned to the owner.

Rule 3. In conducting such tuberculin test the veterinarian shall take at least four preliminary temperatures at intervals of two hours during the day of the evening of injecting, and at least five temperatures, at intervals of two hours, commencing ten hours after injection.

Rule 4. No shipment of dairy or breeding cattle destined to any point in the State of Illinois, from States and territory prescribed and designated in the proclamation of the Governor aforesaid, shall be received by any railroad or transportation company doing business in the State of Illinois, from the original shipper or from any connecting railroad or transportation company, unless the same

be accompanied by the certificate designated in rule 2, properly indorsed, as provided therein; such certificate to be attached to the way bill, memorandum bill, or bill of lading accompanying the shipment and to be delivered with said bill to the consignee.

Rule 5. Any dairy or breeding cattle (cows, bulls or calves) shipped or driven into the State of Illinois from other States and territory designated and described in the Governor's proclamation aforesaid, without being accompanied by the certificate aforesaid, properly indorsed, will, upon discovery, be placed in quarantine until tested with tuberculin by a veterinarian designated by this board, which test shall be made at the expense of the owner; and any cattle that shall react to such test and be condemned will be destroyed without compensation to the owner."

The plea then recites that the Governor, in pursuance of such report of the said board and the statutes of this State, issued a proclamation, in part as follows:

"PROCLAMATION.

Scheduling localities and territory on account of tuberculosis among dairy and breeding cattle:

STATE OF ILLINOIS,     }
EXECUTIVE DEPARTMENT.  }

SPRINGFIELD, June 13, 1899.

Whereas, I have received from the State Board of Live Stock Commissioners the following communication: (Then follows the report of said board hereinbefore recited.)

Now, therefore, I, John R. Tanner, Governor of the State of Illinois, as provided by section 4 of the above entitled act, do hereby make proclamation of the foregoing facts, and schedule the following territory, to wit: *All of the States and Territories of the United States* other than the State of Illinois, *and all foreign countries*, and prohibit the importation of dairy or breeding cattle (*cows, calves or bulls used or intended to be used for dairy or breeding purposes*) *from the above described territory into the State of Illinois*, *except under the regulations hereto attached* and made a part hereof, that have been prescribed by the State Board of Live Stock Commissioners, and approved by me.

This proclamation to go into effect and be in force from and after the first day of July, A. D. 1899.

In testimony whereof I hereunto set my hand and cause the great seal of the State of Illinois to be affixed.

Pierce v. Dillingham.

Done at the city of Springfield on the day and year first above written. John R. Tanner, Governor. By the Governor: James A. Rose."

The plea then recites:

"That on the 19th day of May, 1900, the said proclamation and the said rules of the said State Board of Live Stock Commissioners being then in full force and virtue, and unrevoked, the said twenty-three cows mentioned in said declaration, then and there being dairy and breeding cattle, arrived in Dundee, Kane county, Illinois, in a special stock car of the Chicago & Northwestern Railway Company, and were there delivered by the said railway company to the plaintiff, which said twenty-three cows had been during the month of May, 1900, shipped into the State of Illinois from the State of Wisconsin by the plaintiff, and which said cows were not then and there accompanied by a certificate of a tuberculin test of the said cows, as designated in rule 2 of the said rules and regulations of the said Board of Live Stock Commissioners of the State of Illinois, approved by the said Governor, and which said twenty-three cows were intended to be used for dairy and breeding purposes in the said State of Illinois. That this defendant, Charles A. Pierce, Assistant State Veterinarian, then and there, by virtue of the statutes of the State, and the said proclamation and said rules, served a notice of quarantine of the 'said twenty-three cows upon the plaintiff personally; and after the service of said quarantine notice this defendant, Charles A. Pierce, called upon this defendant, H. F. Demmer, who was then and there sheriff of Kane county, Illinois, to assist him, the said defendant, Charles A. Pierce, to take possession of the said twenty-three cows; and the defendant, Charles A. Pierce, as such veterinarian, assisted by the said defendant, H. F. Demmer, as such sheriff, took possession of the twenty-three cows, for the purpose that the said defendant, Charles A. Pierce, as such veterinarian, might test them with tuberculin, and this defendant, Charles A. Pierce, as such veterinarian, then and there proceeded immediately to test the said twenty-three cows with tuberculin, in accordance with the said rule 5 of the said rules and regulations of the said State Board of Live Stock Commissioners, hereinbefore set forth; which is the same taking and detention in the said declaration above supposed, and none other.

C. H. Wayne and F. W. Joslyn, attorneys for appellants; Botsford, Wayne & Botsford, of counsel.

A rule of the Live Stock Board prohibiting a railroad from importing diseased animals into this State, and, for the purpose of self-protection, establishing quarantine and reasonable inspection, is proper. Salzenstein v. Mavis, 91 Ill. 400.

A rule of a State board, duly organized and existing, is not invalid because it requires a test of an animal imported into this State from a State scheduled against by Governor's proclamation, to ascertain if it is affected with tuberculosis, at the owner's expense. The People v. Harper et al., 91 Ill. 357.

A rule of the State board which authorizes the destruction of an animal affected with tuberculosis, a dangerously contagious disease, without compensation to the owner, is valid and legal. The one who acts under the rule to protect himself must be able to show affirmatively that the animal so destroyed was so affected. Pearson et al. v. Zehr, 138 Ill. 48.

It is in the province of the law-making power to determine when the emergency exists calling into exercise the police power. Town of Lake View v. Rosehill, 70 Ill. 191.

Whether a particular legislation for the protection of life and health is a police power legislation, is a question more properly of legislative cognizance. Daniels v. Hilgard, 77 Ill. 640.

The State Board of Live Stock Commissioners is a quasi-public corporation, and it is now too late to question the power to create such agencies and invest them with such legislative powers as shall be appropriate and necessary to effectuate the objects of their creation. People v. Harper, 91 Ill. 366; Wilcox v. People, 90 Ill. 192; Chicago v. Wright, 69 Ill. 318.

The police power of the State extends to the protection of the lives, health and property of the people. C. & N. W. Ry. Co. v. Chicago, 140 Ill. 309.

The legislature in the exercise of police power may enact statutes regulating trade. Hawthorn v. People, 109 Ill. 302.

The legislature may pass inspection laws. People v. Harper, 91 Ill. 357.

A proclamation takes effect from its date, and the same rule should apply to them as to statutes. Lapeyre v. U. S., 17 Wall. 191; Am. & Eng. Ency., Vol. 19, note 4, p. 225.

Proclamations reserving lands from sale by the President, no particular form is necessary. It is sufficient if it has publicity and accomplishes the end. 101 U. S. Reports, 770; Starr & Curtis' Statutes, Sections 31, 32, 33, 34, 37 and 40 of Chapter 8, relating to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals.

The right to pass inspection laws belongs to the police powers of the government. Cooley's Constitutional Limitations, 6th Ed., pages 720 to 725.

There is no prohibition on the legislature against the creation by it of every conceivable description of corporate authority, and to endow them with faculties and attributes. People ex rel. Solomon, 51 Ill. 50; People v. Draper, 15 N. Y. 532.

The legislature has authority to arrange the distribution of police powers as the public exigencies may require, apportioning them to local jurisdictions to such extent as the law-making power deems appropriate and committing the exercise of the residue to officers appointed, as it may seem fit to ordain. Bush v. Shipman, 4 Scam. 186; Trustees, etc., v. Totman, 13 Ill. 27; County of Richland v. County of Lawrence, 12 Ill. 1.

Power to enact sanitary regulations which shall have the force of law may be conferred on a board by the legislature. Patinsky v. People, 11 Hun, 390; People v. Special Sessions, 7 Hun, 214; Am. & Eng. Ency., Vol. 2, pages 429 to 436.

Where the sanitary commission as a precautionary measure has excluded the cattle of another State from the State, as affected with a contagious and infectious disease, it will be presumed that their judgment and discretion were properly exercised. St. L. & S. W. Ry. v. Smith, 49 S. W. Rep. 627.

When an action of replevin is brought by the owner to recover possession of cattle held by a sheriff under an order issued by the Live Stock Sanitary Commission, requiring him to hold said cattle in quarantine, said order constitutes a sufficient *prima facie* justification of the sheriff's refusal to return said cattle during the quarantine period. Hardwick v. Brookover, 30 Pac. Rep. 21.

An indictment having alleged that no certificate was sent that the cow to be shipped was free from tuberculosis, as far as could be determined by physical examination and the tuberculin test, need not more particularly describe the certificate refused. State v. Snell (R. I.), 42 Atl. Rep. 869.

Demurrer only lies to defects which appear on the face of the pleading to which it is opposed. 6 Ency. Pl. & Prac. 297; Pub. Law R. I., Chap. 344, Sec. 2, 3.

RUSSELL & HAZELHURST and D. B. SHERWOOD, attorneys for appellee.

The State Board of Live Stock Commissioners has no power to make any recommendations to the Governor concerning the importation of cattle into this State from foreign states or countries, nor to make any rules and regulations concerning such importation which is not expressly delegated to it by the legislature, or which may not be reasonably inferred from powers that are delegated to it by the legislature.

The Governor of the State of Illinois has no power to make any proclamation prohibiting the importation of cattle into this State from foreign states and countries, except such as is specifically delegated to him by the legislature.

The power and authority delegated by the legislature to the State Board of Live Stock Commissioners and to the Governor being in derogation of the common law, must be strictly construed.

The executive can exercise no power except such as is clearly granted by the constitution. Field v. The People, 2 Scam. 79; The People v. O'Toole, 164 Ill. 350.

Where an affirmative statute, introductive of new law, directs a thing to be done in a certain manner, it can be done in no other manner. Potter's Dwarris' Stat. 72; Diversey v. Smith, 103 Ill. 378.

Where power is conferred on a municipal corporation to enact rules, such rules must be reasonable. City of Chicago v. Tugman, 78 Ill. 405; Hurst v. Warner, 102 Mich. 247; Potts v. Breen, 167 Ill. 67.

The power conferred by statute upon the State Board of Live Stock Commissioners to make rules and regulations, does not authorize such board to prescribe rules and regulations that are unreasonable or that restrict rights and privileges guaranteed by public law. Potts v. Breen, 167 Ill. 67; Lawbaugh v. Board of Education, 177 Ill. 572; State v. Burge (Wis.), 37 L. R. A. 157; In the Matter of Smith, 48 Am. State Rep. 770; People v. Board of Health, 37 Am. State Rep. 522.

A rule or regulation prohibiting the importation of cattle from all other states or countries is invalid, where the State only authorizes such prohibition of importation from certain localities where a dangerous or infectious disease exists. Hurst v. Warner, 102 Mich. 247.

A rule or regulation making the importation of a certain kind of cattle an offense, and which does not prohibit the importation of certain other kinds of cattle from the same locality that are subjected to the same exposure, is illegal and void. Harding v. The People, 160 Ill. 459.

Police power does not justify class legislation. Eden v. The People, 161 Ill. 296.

There is no presumption in law that tuberculosis is a contagious disease arising from the proclamation of the Governor. Davis v. Walker, 60 Ill. 452.

It is the fact of contagious disease, or of exposure thereto, which, under the statute, gives the power to the Board of Live Stock Commissioners to quarantine, and without that fact exists, no authority to quarantine exists. Pearson v. Zehr, 138 Ill. 48.

If the statute was the same as these rules and regulations

it would clearly be unconstitutional.   In re Barber, 39 Fed. Rep. 641; Harvey v. Huffman, 39 Fed. Rep. 646.

MR. JUSTICE WATERMAN delivered the opinion of the court.

Section 5 of the statute in relation to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals, provides :

" Whenever said Board of Commissioners shall *report* to the Governor that such diseases have become epidemic in certain localities in other States, *or* that *their condition* would render such domestic animals liable to convey such diseases, he may, by proclamation, schedule such localities and prohibit the importation of any live stock of the kind diseased into the State, except under such regulations as may be prescribed by the said board and approved by the Governor."

Under this statute the State Board of Live Stock Commissioners, on June 13, 1899, reported in writing to John R. Tanner, Governor, that tuberculosis, a dangerously contagious disease, prevails to a *greater or less extent among the cattle constituting the dairy and breeding herds of the States and Territories of the United States, and foreign countries,* and that cattle *affected* with this disease, being brought into the State of Illinois, are dangerous and liable to communicate said disease to other cattle with which they are brought in contact, and requested the Governor to issue a proclamation in pursuance of the terms of said act.   Whereupon the Governor issued a proclamation *scheduling all the States and Territories of the United States* other than the State of Illinois, *and all foreign countries,* and prohibited the importation of dairy or breeding cattle, *cows, calves or bulls used or intended to be used for* dairy or breeding purposes from the above described territory into the State of Illinois, except under the regulations to said proclamation attached.   To the regulations thereto attached were the rules made by said board providing that if such cattle were not accompanied by a certificate of some duly authorized and recognized veterinarian of the state or country from which the cattle came, that such cattle have been tested in

accordance with the rules 1, 2 and 3 of said board, then such cattle will be placed in quarantine until tested with tuberculin by a veterinarian designated by the Live Stock Board, which test shall be made at the expense of the owner, and any cattle that shall react to such test and be condemned will be destroyed without compensation to the owner.

The report of the State Board to the Governor does not, in accordance with the statute, state that any contagious or infectious disease has become epidemic, either in the State of Wisconsin or any other state, territory or country; nor does it declare that the condition of the domestic animals of the State of Wisconsin or any other locality is such as would render such domestic animals liable to convey such diseases. It merely declares that tuberculosis, a dangerously contagious disease, prevails to a greater or less extent among the cattle constituting the dairy and breeding herds of all the States and Territories of the United States, and foreign countries, and that cattle affected with this disease (tuberculosis) being brought into the State of Illinois, are dangerous and liable to communicate said disease (tuberculosis) to other cattle with which they are brought in contact; that is to say, the State Board reports that one or more of the cows in the dairy and breeding herds of the State of Wisconsin, Asia, Europe, South America and the rest of the world, was or were affected with tuberculosis; and upon such report as to one cow or more, asked the Governor to, and he did, in so far as by a proclamation he could, prohibit the importation of dairy or breeding cattle (cows, calves or bulls) into the State of Illinois, except upon the conditions prescribed by the Live Stock Board and approved by the Governor, which regulations in effect were that if such cattle had not been submitted to such tests and were not accompanied by such certificate as the Illinois State Board prescribed, they should be seized, quarantined and injected with tuberculin, and that if they did not react to such test and were condemned, they should be destroyed without compensation to the owner.

However great may be the powers of the State Board, it is manifest they are only such as are conferred by the statute. The statute has authorized the Governor to, by proclamation, schedule localities from which the importation of cattle can not be made, only upon a report by the board that infectious and contagious diseases prevail in such localities, or that the condition of cattle there is such as would render the domestic animals thereof liable to convey such diseases, in which case the Governor may, by proclamation, prohibit the importation of any live stock of the kind diseased into the State. The statute is penal, providing, for a violation of some of its provisions, fines ranging from $1,000 to $10,000, and for violation of other provisions, fines ranging from $25 to $200 and prescribing imprisonment in the county jail until the fine and costs are paid, and a forfeiture of all right to compensation for any animal or property destroyed under the provisions of the act. This section, being penal, is to be strictly construed, and can not be extended by implication.

The plea of the State Board did not set up that tuberculosis prevailed in the State of Wisconsin, or in the other States and Territories of the United States, or other foreign countries of the world, or that the State Board were creditably informed and believed that such disease prevailed or was epidemic in Wisconsin or any other part of the world, and that upon such prevalence, report or belief the board had made its report to the Governor, but merely set forth that the board reported that tuberculosis, a dangerous disease, prevailed to a greater or less extent among the cattle constituting the dairy and breeding herds of all the States and Territories of the United States and foreign countries, without, so far as appears, having evidence or belief that tuberculosis was prevalent anywhere.

It was not the design of the legislature to, and the statute does not, confer upon the board and Governor power, merely because they feel so inclined, to prohibit the importation into the State of Illinois of cattle from any and every quarter of the globe, except under such conditions as the board

and Governor may prescribe. The plea of the defendant does not set up that the cattle by it seized were affected or had been exposed to tuberculosis or any other contagious or infectious disease. The statute does not authorize any domestic animals not infected with a contagious or infectious disease to be seized, quarantined or slaughtered, nor does the statute authorize the Live Stock Board and the Governor, or the Governor, or both together, by proclamation, to schedule against the importation into the State of Illinois of cattle from every part of the world. The statute provides that "Whenever said board of commissioners shall report to the Governor that such diseases have become epidemic in certain localities in other States, * * * he may, by proclamation, schedule such locality." The word "locality" signifies "A particular district; confined to a limited region; opposed to general; limited by boundaries, large or small; as a country, a state, a county, a town, or a portion thereof." Anderson's Law Dictionary.

In human laws neither the world, nor the greater portion of it, is spoken of as a locality. In enacting the statute the legislature contemplated that contagious or infectious diseases of domestic cattle might become epidemic in certain localities in other States; that is to say, in prescribed, defined, limited portions of other States. And it was not the intention of the legislature to confer upon the Live Stock Board and the Governor acting together, the power to prohibit the importation of cattle into the State of Illinois from the entire world, except under such conditions as the board might prescribe. For some reason not disclosed, the Live Stock Board and the Governor thought best to make a discrimination as to cattle, the importation of which was prohibited. The importation of dairy or breeding cattle, cows, calves or bulls used or intended to be used for dairy or breeding purposes was prohibited, while the bringing in of steers, beef cattle and heifers, cattle intended for feeding and for market, allowed. It is not set up in the pleadings that beef cattle, steers or heifers are any less likely to be infected with tuberculosis, contagious or infectious diseases,

◇

or that the importation of such cattle would be any less harmful than the bringing in of cows, calves and bulls used or intended to be used for dairy or breeding purposes. Under the rules of the board if one of two citizens of the State of Illinois own and have in any other quarter of the world cows, calves or bulls used or intended to be used for dairy purposes, he can not bring them into the State of Illinois without submitting to the onerous and quite likely disastrous, regulations of the Live Stock Board; while the other citizen who owns and has beef cattle, steers and heifers in the same locality may freely import them into this State. The statute makes no such discrimination, nor does the plea of the defendants give any reason for it. Every person subject to the laws has a right to be governed by general public rules. The law may, indeed, make a distinction as to persons, employments and property. But such distinctions can not be purely arbitrary. Regulations concerning the growing, manufacturing, storing and transportation of property may be made, and great distinctions may properly exist; but such distinctions, neither under the police nor any other power, can be made by a board created by an act of the legislature, and authorized only to deal generally with a certain class of property, except upon reasons based upon the nature of the disease and the objects which the law is intended to accomplish.

Whether the legislature might not provide that all the cattle of this State, or all imported therein, should be inoculated with tuberculin or some other drug as a test or preventive of tuberculosis or other infectious or dangerous disease, it is not now necessary to consider. It is sufficient for the purposes of this case to know that the legislature has nowhere prescribed or authorized any board or officer to declare that no cattle, or a certain class of cattle, shall be brought within this State without being seized, injected with tuberculin, and slaughtered if they do not respond to the test.

The citizens of this State and of the United States have certain rights in respect to property, as well as person,

guaranteed to them both by the Constitution of this State and of the United States. It can not be supposed that the legislature intended to interfere with these rights and confer upon mere administrative and executive officers, power to select certain kinds of cattle, cows, calves and bulls, Jersey steers, dehorned oxen, pure white, black or mottled heifers, and prescribe that such cattle could not be brought into the State of Illinois from any quarter of the globe, except upon seizure, inoculation, and perhaps slaughter at the hands of the Live Stock Board, while other cattle could come in freely. Potts v. Green, 167 Ill. 67; Pearson v. Zehr, 138 Ill. 48; Harding v. The People, 160 Ill. 459 Hurst v. Warner, 102 Mich. 238; State v. Burdge, 37 L. R. A. 159.

The judgment of the Circuit Court is affirmed.